**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| KOREY MAURICE WESS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-cv-01281-HEA |
| | ) |
| SCOT DUNN, | ) |
| | ) |
| Defendant. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter comes before the Court on review of plaintiff Korey Maurice Wess's amended complaint pursuant to 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss the claim against the Maryland Heights Police Department. However, the Court will direct the Clerk of Court to issue process on Sergeant Scot Dunn and Officer Andrew Heimberger in their individual capacities.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820

F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**Background**

Plaintiff is a self-represented litigant who is currently incarcerated at the Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri. On October 25, 2021, he filed a civil action pursuant to 42 U.S.C. § 1983, naming Sergeant Scot Dunn of the Maryland Heights Police Department as the sole defendant. (Docket No. 1). Plaintiff alleged that Sergeant Dunn committed excessive force against him during the course of his arrest. Sergeant Dunn was sued in an official capacity only. (Docket No. 1 at 2).

In his "Statement of Claim," plaintiff asserted that on September 2, 2021, he was inside of

a residence when Sergeant Dunn kicked in the door, pointed his service weapon at him, and ordered him to get on the ground. (Docket No. 1 at 3). Initially, plaintiff refused to comply with Sergeant Dunn's command. (Docket No. 1 at 4). Officer Andy Heimberger then "appeared at the door to back Sergeant Dunn up," whereupon Sergeant Dunn again ordered plaintiff to get on the ground.

At this point, plaintiff stated that he put his "hands up in surrender, turned [his] back on the two officers and [lay] on the kitchen floor of the [residence]." According to plaintiff, "Sergeant Dunn then acted as if he were handcuffing [him] and put [his] right arm behind [his] back until it crossed the back of [his] body and forced [his] upper body to face him." Sergeant Dunn then allegedly "punched [plaintiff] 3 times in the face, knocking out 2 of [his] teeth and [splitting his] upper lip," which required stitches. Next, Sergeant Dunn "turned [plaintiff] back over and began trying to slam [his] face into the concrete floor."

As a result of this incident, plaintiff stated that he lost two teeth and required two stitches for his split lip. He sought total damages of $10,075,000. (Docket No. 1 at 6).

Along with the complaint, plaintiff filed a motion for leave to proceed in forma pauperis. (Docket No. 2). The Court granted the motion and assessed an initial partial filing fee. (Docket No. 11). Because plaintiff was proceeding in forma pauperis, the Court also reviewed his complaint under 28 U.S.C. § 1915. Based on that review, the Court determined the complaint was subject to dismissal, as plaintiff had not stated an official capacity claim against Sergeant Dunn.

Taking into consideration plaintiff's status as a self-represented litigant, the Court did not dismiss the case outright. Rather, plaintiff was instructed to file a written supplement to his complaint indicating whether or not he intended to sue Sergeant Dunn in an individual capacity. He was advised to sign the supplement and return it to the Court within thirty days. Plaintiff was told that his failure to comply would result in the Court proceeding with its 28 U.S.C. § 1915

3

review and treating Sergeant Dunn as being sued in his official capacity only.

Plaintiff complied with the Court's order by filing a signed, written supplement to the complaint. (Docket No. 15). In the supplement, plaintiff explained that he "misunderstood the capacity question" and that he intended to sue Sergeant Dunn "in his individual capacity only."

On February 16, 2022, the Court received an amended complaint. (Docket No. 16).

### The Amended Complaint

Plaintiff's amended complaint is brought pursuant to 42 U.S.C. § 1983, and names the Richmond Heights Police Department, Sergeant Scot Dunn, and Officer Andrew Heimberger as defendants. (Docket No. 16 at 1). Sergeant Dunn and Officer Heimberger are sued in their individual capacities only. (Docket No. 16 at 2-3). The amended complaint raises Fourth Amendment claims of excessive force and failure to intervene.

In the "Statement of Claim," plaintiff asserts that on September 2, 2021, Sergeant Dunn kicked in the door of the residence at 176 Plum, and "pointed his service weapon at" plaintiff. (Docket No. 16 at 3). Sergeant Dunn "advised [plaintiff] to lay on the floor," but plaintiff refused due to "broken glass on the floor" in the area where he was standing. (Docket No. 16 at 3-4).

Immediately after plaintiff's refusal, Officer Heimberger appeared in the door to back up Sergeant Dunn. (Docket No. 16 at 4). Sergeant Dunn again advised plaintiff to get on the floor. Plaintiff "put [his] hands up in surrender with [his] palms facing the two officers, turned [his] back on the two officers, and [lay] on the kitchen floor."

According to plaintiff, Sergeant Dunn "acted as if he were handcuffing [plaintiff] and placed [plaintiff's] right arm behind [his] back until it crossed the back of [his] body and forced the right side of [his] upper body to turn and face [Dunn]." Sergeant Dunn then allegedly "punched [plaintiff] three times in the face," which knocked out two upper teeth, loosened two more, and

4

split his upper lip, requiring stitches. Next, Sergeant Dunn tried "to slam [plaintiff's] face into the concrete floor," though plaintiff "used [his] neck muscles as long as [he] could to prevent [his] face from hitting the floor." (Docket No. 16 at 5). Eventually, plaintiff was able to move his left arm under his forehead, allowing Sergeant Dunn to slam his "forehead into [his] forearm instead of the concrete floor."

While plaintiff was being punched by Sergeant Dunn, he alleges that Officer Heimberger stood about two feet away and watched. (Docket No. 16 at 6). Plaintiff claims that Officer Heimberger did not make any verbal or physical attempts to prevent Sergeant Dunn from punching him. (Docket No. 16 at 6-7). When Sergeant Dunn began trying to slam plaintiff's head into the floor, Officer Heimberger "again stood by and did nothing," even though he "was very well aware that excessive force was being used." (Docket No. 16 at 7).

As a result of this incident, plaintiff states that he sustained the loss of two upper front teeth, that two of his upper teeth were loosened, and that his lip was split, requiring two stitches. (Docket No. 16 at 4). He is seeking a total of $1,275,000 in damages. (Docket No. 16 at 10).

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, accusing defendants of excessive force and failure to intervene. Because he is proceeding in forma pauperis, the Court has reviewed his amended complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss the claim against the Maryland Heights Police Department. However, the Court will direct the Clerk of Court to issue process on Sergeant Dunn in his individual capacity as to plaintiff's claim of excessive force, and on Officer Heimberger in his individual capacity as to plaintiff's claim of failure to intervene.

### A. Claim Against Maryland Heights Police Department

It is not entirely clear whether plaintiff intended to name the Maryland Heights Police Department as a defendant in this action. While the Maryland Heights Police Department is listed in the case caption, plaintiff does not mention it in the section of the form complaint for identifying the parties. In any event, to the extent that plaintiff is suing the Maryland Heights Police Department, the claim must be dismissed. A police department is a department or subdivision of local government, and not a distinctly suable entity. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of West Memphis Police Department and West Memphis Paramedic Services because they were "not juridical entities suable as such"). *See also Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Therefore, any claim against the Maryland Heights Police Department must be dismissed.

Even if the City of Maryland Heights was substituted as the proper party, plaintiff has not stated a municipal liability claim. A local governing body such as the City of Maryland Heights can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an

unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of the City of Maryland Heights.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

7

> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). Here, plaintiff has not presented facts sufficient to support the proposition that he was harmed due to an unconstitutional policy, custom, or failure to train on the part of the City of Maryland Heights.

First, plaintiff does not point to any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body" as being at issue in this case. Certainly, he does not allege that excessive force was used against him due to "a deliberate choice of a guiding principle or procedure made by the [City of Maryland Heights] official who

8

has final authority regarding such matters." Instead, plaintiff's facts concern the personal actions of two law enforcement officers during a single incident of alleged excessive force. The Court cannot infer the existence of an unconstitutional policy or custom from a single occurrence. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

Second, plaintiff has not demonstrated the existence of an unconstitutional custom, as his facts do not show "a continuing, widespread, persistent pattern of unconstitutional misconduct by" City of Maryland Heights employees, much less that policymaking officials have been deliberately indifferent to or tacitly authorized such misconduct. Rather than a persistent pattern, plaintiff has described only a solitary incident. As noted above, the Court cannot infer the existence of an unconstitutional custom from one occurrence.

Third, plaintiff has not shown that the City of Maryland Heights was deliberately indifferent in training or supervising its employees, as he has not shown that the city "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Typically, notice is demonstrated by alleging a "pattern of similar constitutional violations by untrained employees." Plaintiff has not established the presence of any sort of pattern, but has confined his facts to a single occurrence.

Finally, to the extent that plaintiff might seek to hold Maryland Heights responsible for the actions of one of its employees, the Court notes that respondeat superior is not available in a 42 U.S.C. § 1983 action. *See A.H.*, 891 F.3d at 728 ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory").

For all these reasons, plaintiff has failed to demonstrate the liability of the City of Maryland Heights. Therefore, to the extent that plaintiff is attempting to sue the City of Maryland Heights, the claim must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013)

(affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### B. Individual Capacity Claim Against Sergeant Dunn

Plaintiff has sued Sergeant Dunn in his individual capacity, alleging that Dunn used excessive force against him during the course of his arrest, in violation of the Fourth Amendment. "The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018). *See also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person"); and *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen"). The violation of this right is sufficient to support an action under § 1983. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

Whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015). Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018).

In this case, plaintiff states that Sergeant Dunn kicked in the door to a residence, pointed his gun at plaintiff, and ordered plaintiff on the ground. Plaintiff initially refused, but complied with Sergeant Dunn's second command. While plaintiff was on the floor, Sergeant Dunn acted as though he was going to handcuff him, but instead crossed plaintiff's arm behind his back until it forced plaintiff to turn and face Dunn. At that point, plaintiff alleges that Sergeant Dunn punched him three times in the face, knocking out two of his teeth. Then, Sergeant Dunn tried to slam plaintiff's face into the floor, though plaintiff asserts that he was able to cushion these blows with his forearm. According to plaintiff, all this occurred after he had put his hands in the air, surrendered himself, and lowered himself to the ground in compliance with Sergeant Dunn's command. The Court must accept these facts as true, and make all reasonable inferences in plaintiff's favor. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). Therefore, the Court will direct the Clerk of Court to issue process on Sergeant Dunn in his individual capacity as to plaintiff's claim of excessive force.

### C. Individual Capacity Claim Against Officer Heimberger

Plaintiff has sued Officer Heimberger in his individual capacity, alleging that Heimberger failed to intervene to stop Sergeant Dunn from using excessive force. Under the Fourth Amendment, a police officer may be held liable for failing to intervene to prevent the unconstitutional use of force by another officer. *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009). "To establish a failure to intervene claim, however, the plaintiff must show that the officer observed or had reason to know that excessive force would be or was being used." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015). *See also Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009) (explaining that police officer had duty to intervene to prevent the excessive use of force where the officer was aware of the abuse and the duration of the episode was sufficient

11

to permit an inference of tacit collaboration); and *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) (stating that in Fourth Amendment excessive force context, a police officer may be liable for failing to intervene "where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration").

In this case, plaintiff alleges that Sergeant Dunn ordered him to the floor, acted as though he was going to handcuff him, punched him in the face three times, and tried to slam his head into the ground. While this occurred, plaintiff asserts that Officer Heimberger was only two feet away, that Officer Heimberger witnessed Sergeant Dunn's actions, and that Officer Heimberger did not say or do anything to stop Sergeant Dunn, even though he was in a position to do so. The Court must accept these allegations as true, and make all reasonable inferences in plaintiff's favor. *See Jones*, 915 F.3d at 499. Therefore, the Court will direct the Clerk of Court to issue process on Officer Heimberger in his individual capacity as to plaintiff's claim of failure to intervene.

**D. Motion to Reassess Initial Partial Filing Fee**

The Court has received a letter from plaintiff that has been construed as a motion to reassess his initial partial filing fee. (Docket No. 14). In the motion, plaintiff states that he only receives $5.00 a month now that he has been transferred to the Missouri Department of Corrections. As such, he cannot afford to pay the initial partial filing fee. In support of the motion, plaintiff has submitted a Department of Corrections account summary. (Docket No. 17). Having reviewed the motion, the Court will order plaintiff to pay an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1).

**E. Motion for Extension of Time**

Plaintiff has filed a motion for an extension of time in which to file his inmate account statement. (Docket No. 18). The motion will be denied as moot as plaintiff has submitted an

12

account statement to the Court and an initial partial filing fee has been assessed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to reassess his initial partial filing fee (Docket No. 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $1.00 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for an extension of time in which to submit his inmate account statement (Docket No. 18) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's claim against the Maryland Heights Police Department is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendant Scot Dunn in his individual capacity as to plaintiff's claim of excessive force, and on defendant Andrew Heimberger in his individual capacity as to plaintiff's claim of failure to intervene.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 17th day of February, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE