UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KOREY MAURICE WESS,                           )
                                              )
      Plaintiff,                            )
                                              )
v.                                            ) Case No. 4:21CV1281 HEA
                                              )
SCOTT DUNN, et al.,                           )
                                              )
                                              )
      Defendants.                           )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court Defendants' Motion for Summary Judgment, [Doc. No. 60], Plaintiff's Motion to Set Trial Date, [Doc. No. 67], and Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment, [Doc. No.80]. For the reasons set forth below, the Motion for Summary Judgment will be granted. Plaintiff's Motions are denied as moot.

### Facts and Background

Plaintiff's amended complaint was brought pursuant to 42 U.S.C. § 1983, and named the Maryland Heights Police Department, Sergeant Scot Dunn, and Officer Andrew Heimberger as defendants. Sergeant Dunn and Officer Heimberger are sued in their individual capacities only. (Docket No. 16 at 2-3). The Police Department has been previously dismissed. The amended complaint raises Fourth Amendment claims of excessive force and failure to intervene. The Court finds the

following undisputed material facts:[1]

On the morning of September 2, 2021, Plaintiff entered the residence of Sonya Kilgore (176 Plum Avenue, Maryland Heights, MO) at approximately 4:30 a.m. without her consent. Ms. Kilgore has stated that she woke up to Plaintiff standing over her, telling her he was going to "beat her ass all day."  Ms. Kilgore has stated that Plaintiff physically threatened her for hours and, immediately after Ms. Kilgore's son left for school at 7:30 a.m., Plaintiff locked the door and began to repeatedly punch her in the face and body. Ms. Kilgore's neighbor heard the physical abuse and alteration next door and called 911 for help.

Defendant Lt. Scot Dunn was the first police officer to respond and arrive on the scene at approximately 7:32 a.m. after hearing over the radio a civil disturbance was taking place at 176 Plum Avenue. Defendant briefly spoke to the neighbor reporting party, Andrea Harris, who informed Defendant Lt. Dunn that a male was still inside the residence beating Ms. Kilgore. While speaking with Ms. Harris, Defendant Lt. Dunn heard a female voice scream for help and what sounded like a

---

[1] The facts are drawn from Defendant's Statement of Uncontroverted Material Facts. The Court deems admitted each of Defendant's proffered material facts, as Plaintiff does not specifically deny the facts with references to the record. Plaintiff's failure violates this Court's local rules, which require either an admission or denial of each fact. *See* E.D. Mo. L.R. 4.01(E); *see also Echols v. Courier Express One, Inc*., 2022 WL 5241810, at *2 (E.D. Mo. Oct. 6, 2022) ("Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense." (quoting *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007))).

physical struggle from inside 176 Plum Avenue.

Defendant approached the door and knocked loudly yelling, "Police" at which point a female voice yelled back, "come in!" Because the door to Ms. Kilgore's apartment was locked, Defendant Lt. Dunn kicked the door open and immediately saw Plaintiff standing over Ms. Kilgore, who was on the ground at the bottom of the stairs near the entry. Defendant Lt. Dunn immediately pulled Plaintiff away from Ms. Kilgore, swung him around to the opposite wall, and attempted to gain control of Plaintiff's wrists to place him in handcuffs. Plaintiff resisted and fought against Defendant Lt. Dunn's attempts to control his wrists and turn him to place him in handcuffs and did not comply with any of Defendant Lt. Dunn's orders to do the same.

Plaintiff and Defendant Lt. Dunn were actively engaged in a struggle face-to-face against the wall when Defendant Heimberger entered the residence for assistance. Defendant Heimberger saw Plaintiff resisting Defendant Lt. Dunn and immediately attempted to secure Plaintiff. Because Plaintiff continued to resist Defendant Lt. Dunn's attempts to place him in handcuffs, Defendant Lt. Dunn swept Plaintiff's legs and went to the ground with Plaintiff in the area between the kitchen and hallway. With Plaintiff lying face down and Defendant Lt. Dunn still attempting to handcuff him, Plaintiff continued to struggle with Lt. Dunn and refused to give up his hands.

Although Defendant Lt. Dunn gained control of one of Plaintiff's wrists, Plaintiff's unrestrained arm was reaching underneath his body and toward his waist. In an effort to stun Plaintiff to give himself up, Defendant Lt. Dunn then struck the Plaintiff in the head three times, which was effective in causing Plaintiff to give up his free hand and so to allow Lt. Dunn to handcuff him.

Given his prior knowledge of Plaintiff's propensities and as being known as to be "armed and dangerous", Defendant Lt. Dunn feared Plaintiff had a firearm that he was reaching for before he struck Plaintiff. Defendant Heimberger then helped Defendant Lt. Dunn escort Plaintiff out of the residence into police custody.

At no instance did Plaintiff ever give himself up, and he actively resisted all of Defendant Lt. Dunn's attempts to arrest him.

Defendant Lt. Dunn was aware of Plaintiff, the likelihood of Plaintiff being armed and dangerous, and the likelihood that Plaintiff was involved in the on-going disturbance before arriving at 176 Plum Avenue on the morning of September 2, 2021. On a prior occasion,  February 22, 2020, the Maryland Heights Police Department responded to a domestic assault incident at 176 Plum Avenue in Maryland Heights, at which time Ms. Kilgore and a witness stated Plaintiff assaulted Ms. Kilgore.  As a supervisor, Defendant Lt. Dunn reviewed and approved the Maryland Heights Police Department Incident Report stemming from the February 22, 2020 incident.

On March 2, 2020, the Maryland Heights Police Department again received a complaint from Ms. Kilgore concerning Plaintiff threatening to kill her, which led to charges against Plaintiff for stalking and leaving the scene of an accident.

On July 11, 2021, Maryland Heights police officers responded to Ms. Kilgore's apartment upon her call and complaint about Plaintiff, who was arrested for active warrants, resisting arrest, and fleeing from police officers.

On August 29, 2021, Plaintiff was arrested by the Maryland Heights Police Department for unlawful possession of a firearm and resisting arrest.

As of August 29, 2021, Defendant Lt. Dunn was aware of the August 29, 2021 arrest of Plaintiff, which involved Plaintiff fighting with officers and aggressively attempting to retrieve a firearm in his waistband as the officers tried to arrest him.

As reflected in the police report from August 29, 2021, which Defendant Lt. Dunn reviewed and approved, a loaded gun, 9mm with extended magazine containing 22 rounds was seized from Plaintiff.

At the pre-shift roll call at the Maryland Heights Police Department on the morning of September 2, 2021 and prior to the incident in question, Defendant Lt. Dunn announced to all officers in his platoon that they should be careful of Plaintiff, indicating that he may be armed and dangerous.

On October 13, 2021, a grand jury indicted Plaintiff on two felony Counts of 1st Degree Burglary, 2nd Degree Kidnapping, and 2nd Degree Domestic Assault based on events that took place on September 2, 2021 at 176 Plum Avenue described above.

## Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine [dispute] as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that]...raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch.*

*Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010) (quotation marks omitted) (quoting *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir. 2002)).

## Discussion

### Count I-Defendant Dunn

Defendant Dunn moves for summary judgment on the grounds that the amount of force used in the incident was objectively reasonable under all the attendant circumstances and that he is entitled to qualified immunity.  Defendant Heimberger argues he is entitled to summary judgment based on the objective reasonableness of Defendant Dunn's actions; since Dunn cannot be found liable, he had no duty to intervene

"Qualified immunity shields police officers from liability for civil damages when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *White v. Pauly*, 580 U.S. 73, 78-79, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017) (per curiam) (quotation omitted). To survive summary judgment dismissing his § 1983 claim, [Plaintiff] must proffer facts showing that (1) a statutory or constitutional right was violated;

and (2) the right was "clearly established." *Hansen v. Black*, 872 F.3d 554, 557-58

(8th Cir. 2017)." *Westwater v. Church*, 60 F.4th 1124, 1126–32 (8th Cir. 2023).

> The Fourth Amendment includes the right "to be secure ... against unreasonable ... seizures." Citizen claims that a police officer "used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person ... are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Though [Plaintiff] was already detained when the alleged excessive force was used in this case, the objective reasonableness standard applies to his claim. *Cf. Kingsley v. Hendrickson*, 576 U.S. 389, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015).

> "[D]etermining whether the force used to effect [sic] a particular seizure is 'reasonable' requires balancing of the individual's Fourth Amendment interests against the relevant governmental interests." *County of L.A. v. Mendez*, 581 U.S. 420, 427, 137 S.Ct. 1539, 198 L.Ed.2d 52 (2017) (quotation omitted). The inquiry is based on the totality of the relevant circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. We analyze these factors from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

> [W]hen the issue of unreasonable force is raised in a motion for summary judgment, a court must construe the facts in favor of [Plaintiff], the non-moving party. *Frederick v. Motsinger*, 873 F.3d 641, 644 (8th Cir. 2017). Thus, when "opposing parties tell two different stories," the court must view material disputed facts "in a light most favorable to the non-moving party -- as long as those facts are not so 'blatantly contradicted by the record ... that no reasonable jury could believe' them." *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009), quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

*Id.*

The critical inquiry in an excessive force case is whether Plaintiff posed a

realistic threat to the safety of Defendant Dunn or a risk of flight that justified the degree of force used.  The undisputed facts establish that Defendant Dun was aware of Plaintiff's previous violent acts against Ms. Kilgore.  He spoke with Ms. Kilgore's neighbor who notified him that she had heard Plaintiff and Ms. Kilgore in an altercation.  Plaintiff had been the subject of previous calls to the police by Ms. Kilgore.  Ms. Kilgore and a witness stated Plaintiff had assaulted Ms. Kilgore.

Plaintiff was previously arrested for active warrants, resisting arrests, and fleeing from police officers.  He was arrested for unlawful possession of a firearm, a loaded 9mm handgun with an extended magazine on August 29, 2021.

When Defendant Dunn entered the apartment on September 2, 2021, he saw Plaintiff standing over Ms. Kilgore, who was laying on the ground.  Defendant removed Plaintiff from Ms. Kilgore. Plaintiff resisted Dunn's attempts to handcuff him.  Based on his prior knowledge of Plaintiff and his arrest record, Defendant Dunn had a reasonable belief Plaintiff could be armed with a firearm and that he was a danger to Dunn as well as Ms. Kilgore. Plaintiff was subsequently arrested and indicted by a state criminal grand jury of three felonies: first degree burglary, second-degree kidnapping, and second-degree domestic assault.

Based on the evidence in the record, Defendant Dunn exercised reasonable-use-of-force in his altercation with Plaintiff.

Moreover, under the second prong of the qualified immunity inquiry,

9

Plaintiff has failed to establish any violation of Plaintiff's clearly established

constitutional rights.

> Qualified immunity "gives ample room for mistaken judgments by
> protecting all but the plainly incompetent or those who knowingly violate
> the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d
> 589 (1991). Our standard for applying this principle is well established:
>
> > For a right to be clearly established, the contours of the right must be
> > sufficiently clear that a reasonable official would understand that what
> > he is doing violates that right. A plaintiff must identify either
> > controlling authority or a robust consensus of cases of persuasive
> > authority that placed the statutory or constitutional question beyond
> > debate at the time of the alleged violation.
>
> *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (en banc) (citations
> omitted). When the Fourth Amendment issue is the use of excessive force,
> the Supreme Court has made it clear that specificity is required.
> "[P]olice officers are entitled to qualified immunity unless existing
> precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, —
> — U.S. ——, 138 S. Ct. 1148, 1153, 200 L.Ed.2d 449 (2018) (quotation
> omitted). [Plaintiff] must "identify a case that put [Defendant] on notice that
> his specific conduct was unlawful." *Rivas-Villegas v. Cortesluna*, —— U.S. –
> ——, 142 S. Ct. 4, 8, 211 L.Ed.2d 164 (2021).

*Westwater*, 60 F.4th at 1130.

In deciding this issue, the Court must "view the evidence at summary

judgment in the light most favorable to [Plaintiff] with respect to the central facts

of this case." *Tolan v. Cotton*, 572 U.S. 650, 657, 134 S.Ct. 1861, 188 L.Ed.2d 895

(2014). In this case, Plaintiff has failed to identify a specific case that would put

Defendant on notice that his specific conduct was unlawful.  Indeed, no case is

available since Defendant's actions were reasonable under all of the facts known to

him and Plaintiff's previous and current behavior toward Ms. Kilgore and

Defendant Dunn; Defendant acted with objective reasonableness and therefore did

not violate Plaintiff's Fourth Amendment right to be free from *unreasonable*

seizures.  The seizure, under all of the attendant circumstances, was objectively

reasonable. Defendant Dunn is entitled to summary judgment.

**Count II-Officer Heimberger**

Because the Court does not find Defendant Dunn used unconstitutional

excessive force as explained above, Defendant Heimberger cannot be held liable

for failing to intervene as to these uses of force. *See  Zubrod v. Hoch*, 907 F.3d

568, 580 (8th Cir. 2018) (affirming summary judgment on failure-to-intervene

claim since such claim "may not prevail in the absence of a showing of excessive

force") (citing *Hicks v. Norwood*, 640 F.3d 839, 843 (8th Cir. 2011); *Fletcher v.*

*City of Sugar Creek, Missouri*, No. 4:20-CV-00030-RK, 2022 WL 14131722, at *9

(W.D. Mo. Oct. 24, 2022)(Since the Court did not find Defendants used

unconstitutional excessive force, Defendant Chief could not be held liable for

failing to intervene as to these uses of force);  *Quinones v. City of Edina*, No. 20-

CV-1329 (JS/BRT), 2022 WL 2954028, at *6 (D. Minn. July 26, 2022) (finding

"because each officer acted reasonably in using force, no officer had an obligation

to intervene to prevent the use of that force"); *Clark v. Ware*, 873 F. Supp. 2d

1117, 1122 (E.D. Mo. 2012) (citing *Putman v. Gerloff*, 639 F.2d 415, 423-24 (8th

Cir. 1981)).

## Conclusion

After careful consideration and for the reasons explained above, Defendants are entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 60], is **GRANTED**.

**IT IS FURTHER ORDERED** that since Defendants' Motion for Summary Judgment was timely filed, Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Set Trial Date is **DENIED as moot.**

A separate Judgment accompanies this Memorandum and Order.


Dated this 22nd day of March,  2023.


_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE


12